UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRENDA GRALIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:19-cv-02079-JMS-MPB |
| | ) | |
| EDWARDS RIGDON CONSTRUCTION COMPANY, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | | |

## ORDER

Plaintiff Brenda Gralia has sued her former employer, Defendant Edwards Rigdon Construction Company ("the Company"), alleging that her employment was unlawfully terminated under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). The Company has filed a Motion for Summary Judgment [Filing No. 35], which is now ripe for the Court's decision. In connection with the Motion for Summary Judgment briefing, the Company has also filed a Motion to Strike Paragraphs 10 and 12 of the Affidavit of Ms. Gralia [Filing No. 40], which is also now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not

1

establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the granting of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).  The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them."  *Johnson*, 325 F.3d at 898.  Any doubt as to the

existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### MOTION TO STRIKE

The Company filed a Motion to Strike Paragraphs 10 and 12 of an affidavit by Ms. Gralia that she submitted with her opposition brief.  [Filing No. 40.]  Those paragraphs contain statements purportedly made by Brian Turley—a former employee of the Company—to Ms. Gralia.  Ms. Gralia testifies as follows in Paragraphs 10 and 12:

> 10.   Brian Turley, former Vice President of Project Management with [the Company]  who worked with me, verbally stated that I was excellent at my job, able to perform all of [the Company]'s bookkeeping duties, able to master new tasks, and was willing to take on more work.
>
> * * *
>
> 12.   Brian Turley, who was fifty-nine (59) years old at the time that Defendant terminated my employment, was also asked by Jeff Rigdon, during his year-end evaluation when he was going to retire.  He mentioned to me that he believed Jeff Rigdon's comments were inappropriate.

[Filing No. 37-6 at 3-4.]  The Company moves to strike these statements on hearsay grounds. [Filing No. 40 at 2-3.]

In response, Ms. Gralia presents five arguments to avoid the hearsay bar.  First, Ms. Gralia urges this Court to deny the Motion to Strike because S.D. Ind. Local Rule 56-1(i) requires summary judgment evidentiary issues to be raised within briefing rather than by a collateral motion.  [Filing No. 41 at 2.]  Second, Ms. Gralia cites case law for the proposition that a "'nonmoving party does not have to produce evidence in a form that would be admissible at trial in order to avoid summary judgment.'"  [Filing No. 41 at 2 (quoting *Dunn-Lanier v. Indianapolis Pub. Schs.*, 2019 WL 3532841, at *4 (S.D. Ind. Aug. 2, 2019)).]  Third, Ms. Gralia contends that Paragraph 12 is not offered to prove the truth of matter asserted therein (*i.e.*, that Mr. Rigdon asked

Mr. Turley about his retirement plans and Mr. Turley found it inappropriate) but rather it is being offered "to prove a pattern or practice of discriminatory activity by the Defendant against people over the age of forty (40) years old." [Filing No. 41 at 3.]   Fourth, Ms. Gralia contends that Paragraph 12 is excluded from the definition of hearsay under Rule 801(d)(2)(C) of the Federal Rules of Evidence, which provides that a statement is not hearsay if it is "offered against an opposing party" and "was made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C).  Finally, Ms. Gralia attempts to attach an affidavit[1] by Mr. Turley to her response to the Company's Motion to Strike.  [Filing No. 41-1.]

A party may not rely on inadmissible hearsay to oppose a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).  Hearsay is "a statement that . . . a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2).  "And hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed, provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997); *see MMG Fin. Corp. v. Midwest Amusements Parks, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment.").

Ms. Gralia attempts to offer statements purportedly made by Brian Turley through her own affidavit.  In Paragraph 10, Ms. Gralia recounts statements purportedly made by Mr. Turley to her

---

[1] Notably, Mr. Turley's belated affidavit is different from the hearsay testimony provided by Ms. Gralia.  Instead of finding Ms. Gralia "excellent at [her] job," [Filing No. 37-6 at 3], Mr. Turley states that Ms. Gralia was "capable," [Filing No. 41-1 at 2].

concerning her job performance.  Ms. Gralia relies on these statements as evidence that her job performance did not need improvement—that is, to prove the truth of the matter asserted. Testimony recounting what another individual said is a classic example of hearsay.  *See Graves v. St. Joseph Cnty. Health Dept.*, 2012 WL 4118588, at *7 (N.D. Ind. Sept. 17, 2012) (granting motion to strike a "classic example of hearsay" where plaintiff's affidavit stated that "I was personally told a subjective and unauthorized system of 19 key requirements, was developed through the South Bend Human Rights Commission, and applied to my rating for promotion").

As to Paragraph 12, Ms. Gralia recounts a conversation that Mr. Turley allegedly had with Company president Jeff Rigdon during which Mr. Rigdon asked Mr. Turley if he was going to retire, as well as Mr. Turley's opinion as expressed to Ms. Gralia that this line of inquiry was inappropriate.  Ms. Gralia relies on this statement to show a purported "pattern or practice of discriminatory activity by the Defendant against people over the age of forty."  [Filing No. 41 at 3.] Thus, Ms. Gralia offers the statement as evidence of the truth of the matter asserted—*i.e.*, that Mr. Rigdon made these remarks to Mr. Turley and Mr. Turley believed them to be inappropriate.

These statements are impermissible hearsay (and perhaps double hearsay in the case of Mr. Rigdon's statement to Mr. Turley, which Mr. Turley then reported to Ms. Gralia).  Ms. Gralia did not timely submit any deposition testimony, affidavits, or declarations from Mr. Turley about these alleged statements.

Ms. Gralia's arguments to avoid hearsay do not overcome the hearsay bar.  To deny the Motion to Strike because the Company raised its objection in a collateral motion rather than within its reply brief under S.D. Ind. Local Rule 56-1(i) would elevate form over function.  Ms. Gralia has had the opportunity to respond to the City's Motion to Strike and is therefore not prejudiced by the City's failure to include this evidentiary issue in its reply brief, which was filed the same

day as the Motion to Strike.

Next, Ms. Gralia's citation to *Dunn-Lanier* does not save the contested paragraphs. The proposition that a "'nonmoving party does not have to produce evidence in a form that would be admissible at trial in order to avoid summary judgment,'" [Filing No. 41 at 2], supports allowing testimony for which a foundation is otherwise lacking or documents that need authentication and background. *See Dunn-Lanier*, 2019 WL 3532841, at *4 (denying motion strike letters of recommendation in support of plaintiff where authors of letters were available for trial). Here, the statements sought to be admitted are not documents that can be authenticated but rather classic hearsay in the form of testimony about what another person said in Paragraph 10, and in the case of Paragraph 12, what another person said a second person said.

Ms. Gralia's contention that Paragraph 12 is not offered to prove the truth of matter asserted therein but rather "to prove a pattern or practice of discriminatory activity by the Defendant against people over the age of forty (40) years old," [Filing No. 41 at 3], is without merit. The statement can only be evidence of an alleged pattern or practice if it is true (or, at least offered for its truth).

Nor does Rule 801(d)(2)(C) of the Federal Rules of Evidence save Paragraph 12. That provision provides that a statement is not hearsay if it is "offered against an opposing party" and "was made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C). Regarding the statements made by Mr. Turley, Ms. Gralia provides no evidence that Mr. Turley was authorized to speak on behalf of the Company on any subject, let alone human resources matters. *See Burton v. Kohn Law Firm*, 934 F.3d 572, 583 (7th Cir. 2019) ("Mr. Burton offers no evidence that Kohn or Unifund authorize Reinecke to speak on behalf of either company on any subject, let alone about the account in default here. Consequently, her email is not a statement by an opposing party as contemplated by Rule 801(d)(2)(C)."); *Keating v.*

*Paulson*, 2007 WL 3231437, at *8 (N.D. Ill. Oct. 25, 2007) (statement was hearsay where no evidence that speaker was involved in hiring process). And, Ms. Gralia's attempt to bootstrap Jeff Rigdon's alleged statement to Mr. Turley concerning Mr. Turley's retirement plans under Rule 801(d)(2)(C) fails because Ms. Gralia cannot overcome the first level of hearsay (that Ms. Gralia is testifying about what Mr. Turley told her) to allow the Court to consider the second level of hearsay (what Mr. Rigdon told Mr. Turley). *See* Fed. R. Evid. 805; Wright & Miller, 30B Fed. Prac. & Proc. § 7042 (2020 ed.) ("The correct analysis for any combined out-of-court statement is to analyze each layer to determine if it is barred by the hearsay rules.").

Finally, Ms. Gralia's attempt to attach an affidavit by Mr. Turley comes too late. Ms. Gralia was required to put forth her evidence in response to the Company's summary judgment motion.

The Company's Motion to Strike is **GRANTED**, and the Court will not consider Paragraph 10 or 12 of Ms. Gralia's affidavit in ruling on the Company's Motion for Summary Judgment.[2]

## III.
### MOTION FOR SUMMARY JUDGMENT

### A. Statement of Facts

The following factual background is set forth pursuant to the summary judgment standard detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

*1. Ms. Gralia's Employment History and Hiring by the Company*

---

[2] The Court further finds that consideration of the stricken paragraphs would not change the analysis set forth in this Order. Second guessing the wisdom of employment decisions and performance assessments is insufficient evidence of pretext. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002). An inquiry about an employee's retirement plan is insufficient evidence of discrimination or pretext. *See Colosi v. Electri-Flex*, 965 F.2d 500, 502 (7th Cir. 1992).

Ms. Gralia is a 66-year-old former employee of the Company and was terminated effective August 23, 2018. [Filing No. 35-17 at 2.]  The Company is a construction and construction-management business based in Danville, Indiana.  [Filing No. 35-2 at 4.]  The Company hired Ms. Gralia as a receptionist effective January 1, 2005.  [Filing No. 35-2 at 5.]  At the time she began working for the Company as a receptionist, Ms. Gralia was 50 years old.  [Filing No. 35-17 at 2.]  Jeff Rigdon is the Company's president and has held that position since the inception of the Company.  [Filing No. 35-2 at 4.]

Prior to her hiring in 2005, Ms. Gralia had worked intermittently in office jobs while she raised her family.  [Filing No. 37-3 at 8-10.]  Ms. Gralia does not have a college degree, nor any formal training or certifications related to bookkeeping or accounting or related software.  [Filing No. 37-3 at 9; Filing No. 37-3 at 17-19; Filing No. 37-3 at 27-28.]  From 1974 until approximately 1980, Ms. Gralia worked for A&P Tea Company performing payroll and accounting tasks.  [Filing No. 37-3 at 9.]  After that, she worked in the accounting department of a life insurance company until 1983 when she left to stay home with her children.  [Filing No. 37-3 at 10.]  Starting in approximately 1987, Ms. Gralia worked with a temporary service called Norrell Temporary Service where she would take temporary assignments on "all kinds" of jobs, such as "filing" and "helping out in the accounting department," among other jobs.  [Filing No. 37-3 at 10.]  She then became a contract employee for FedEx for "seven or eight years" starting in 1996 or 1997, where she was responsible for vehicle maintenance paperwork, "keep[ing] track of all the trucks and when they needed an A, B, or C service and let[ting] the mechanics know in that area what needed to be done, what truck numbers they were and, you know, mak[ing] sure they got done and us billed correctly."  [Filing No. 37-3 at 11.]  After Ms. Gralia left that position, she worked for RDS in the accounting department for about nine months in 2004.  [Filing No. 37-3 at 11-12.]

In addition to her traditional duties as receptionist at the Company, roughly a year after her hiring, Ms. Gralia began assisting the Company's then-bookkeeper, Monica Edwards, with certain bookkeeping responsibilities, such as invoicing (*i.e.*, keeping track of accounts receivable and accounts payable) and account coding (*i.e.*, ensuring the billings were properly coded to the appropriate general ledger account or job cost code). [Filing No. 37-3 at 15-16.] Ms. Edwards trained Ms. Gralia to use accounting software called Sage so that Ms. Gralia could assist with some accounting tasks and provide back-up bookkeeping support when Ms. Edwards was out of the office. [Filing No. 37-3 at 15-16.]

### 2. *The Company Hires Ms. Gralia to be Its Bookkeeper*

When Ms. Edwards retired in June 2015, the Company hired Ms. Gralia to be the new bookkeeper. [Filing No. 37-3 at 17; Filing No. 37-3 at 23.] Ms. Gralia was 60 at the time. [*See* Filing No. 37-3 at 50.] Ms. Gralia testified that Mr. Rigdon interviewed at least one other candidate for the bookkeeper position before hiring Ms. Gralia. [Filing No. 37-3 at 41.] Ms. Gralia described this candidate as "older" and said that after the candidate left the interview, Mr. Rigdon commented to Ms. Gralia "he probably should not say this, but he wanted somebody younger." [Filing No. 37-3 at 41.]

As part of the transition to full-time bookkeeper, Ms. Edwards provided additional training to Ms. Gralia on payroll and bookkeeping for about two months prior to Ms. Edwards' departure from the Company. [Filing No. 37-3 at 17-18.]

In October 2015, the Company contracted with an independent CPA—Teresa Boshears—to assist Ms. Gralia with certain accounting functions. [Filing No. 35-3 at 2.] Ms. Boshears found that Ms. Gralia struggled to prepare necessary month-end and year-end financial reports. [Filing No. 35-3 at 3.] Ms. Boshears testified that Ms. Gralia was unable to prepare monthly Work in

Progress Statements ("WIPs") that are "absolutely necessary to close out reports in the construction industry," so Ms. Boshears prepared the WIPs.  [Filing No. 35-3 at 3.]  More fundamentally, Ms. Boshears concluded that Ms. Gralia "did not have a foundational understanding of accounting, which was necessary to keep [the Company's] books properly" and worked in a very mechanical fashion that left Ms. Gralia unable to address issues as they arose.  [Filing No. 35-3 at 2-3.]  Ms. Gralia stated that she was not asked to prepare WIPs by anyone at the Company, and if she had been asked, she would have prepared the reports.  [Filing No. 37-6 at 5.]

Ms. Gralia received written performance reviews for her performance in calendar years 2016 and 2017, which were performed and signed by Mr. Rigdon.  [Filing No. 35-4; Filing No. 35-5.]  For calendar year 2016, Ms. Gralia's first full year as bookkeeper, under "Items to Work On," the review listed "Continue getting familiar with Sage" and "Being able to close months, quarter, year without help from Teresa [Boshears]."  [Filing No. 35-4 at 2.]  For calendar year 2017, the review once again listed "Being able to close months, quarter, year without help from Teresa [Boshears]" as areas for Ms. Gralia to improve upon.  [Filing No. 35-5 at 2.]  Despite these noted deficiencies, the Company paid Ms. Gralia a performance bonus of $500 in 2016 and $750 in 2017.  [Filing No. 35-5 at 3.]  Mr. Rigdon testified that when the Company "ha[s] a decent year, we try to give everybody a little extra," [Filing No. 35-2 at 6], and that in 2017 "[a]s a whole the company did well that year, so everyone got a bonus" because Mr. Rigdon "didn't want to exclude anyone" [Filing No. 35-2 at 10].

Starting in 2017, at Ms. Gralia's request, she reduced her work schedule to four days per week, working Monday through Thursday, from 7:30 a.m. to 3:30 p.m. with no lunch break.  [Filing No. 35-13; Filing No. 37-6 at 4.]

       *3.   The Company Hires Ms. Pedigo*

In October 2016, the Company hired Jessica Pedigo.  [Filing No. 35-6 at 2.]  In an email announcing Ms. Pedigo's hiring, Mr. Rigdon informed the Company's employees that Ms. Pedigo will "take on many roles.  She will be the Office Manager, Receptionist, and help with Bookkeeping." [Filing No. 35-9 at 2.]  Mr. Rigdon told Ms. Gralia that Ms. Pedigo would be the receptionist and Ms. Gralia's back-up, much like the role Ms. Gralia had filled when Ms. Edwards was bookkeeper.  [Filing No. 37-3 at 25-26.]  Ms. Pedigo was 33 years old at the time she was hired.  [Filing No. 35-17 at 2.]  She worked Mondays through Thursdays from 8:00 a.m. until 5:00 p.m. and Fridays from 8:00 a.m. until 12 noon.  [Filing No. 35-2 at 11; Filing No. 37-6 at 4]

Ms. Pedigo had accounting experience and had taken classes in accounting.  [Filing No. 35-6 at 2.]  During the 3-½ years preceding her employment with the Company, Ms. Pedigo was the office manager at an excavating company where her duties included payroll processing, invoicing, and generating weekly and monthly reports.  [Filing No. 35-6 at 2; Filing No. 35-10 at 2.]  Prior to that, Ms. Pedigo held several accounting and bookkeeping positions, dating back to 2002.  [Filing No. 35-6 at 2.]  Ms. Pedigo also had taken multiple accounting-related classes at the local community college and was certified in accounting programs such as QuickBooks, Excel, Fundamental Payroll, and Bookkeeping.  [Filing No. 35-6 at 2.]  Upon joining the Company, Ms. Pedigo took over accounts receivable, a task that had previously been performed by project managers, and began performing bookkeeping functions, including preparing WIPs and helping close out months, quarters, and years.  [Filing No. 35-2 at 7; Filing No. 37-3 at 27; Filing No. 37-3 at 30-31.]

Ms. Boshears worked with both Ms. Pedigo and Ms. Gralia after Ms. Pedigo joined the Company.  [Filing No. 35-3 at 3.] Ms. Boshears found that Ms. Pedigo had a "good understanding of bookkeeping, much more so than [Ms. Gralia]."  [Filing No. 35-3 at 3.]  Ms. Pedigo was able

to complete WIP reports and handle account adjustments with competence such that Ms. Boshears "could take a step back from preparing [the Company]'s reports and just review [Ms. Pedigo's] work." [Filing No. 35-3 at 3-4.] Ms. Pedigo's reporting was also of such quality that Ms. Boshears only reviewed Ms. Pedigo's work quarterly, rather than monthly as she had with Ms. Gralia, which decreased the consulting fees paid by the Company to Ms. Boshears. [Filing No. 35-3 at 4.]

Ms. Pedigo testified that she found it difficult to work with Ms. Gralia. [Filing No. 35-6 at 2-3.] Ms. Pedigo said that Ms. Gralia was "resistant to change" and was averse to taking on new tasks. [Filing No. 35-6 at 2-3.] Ms. Pedigo also observed Ms. Gralia's accounting skills to be lacking, noting that Ms. Gralia relied heavily on a set of notes left by Ms. Edwards, and if an issue was not addressed in those notes, Ms. Gralia "struggled" to solve the issue. [Filing No. 35-6 at 3.]

### 4. Mr. Rigdon and Ms. Gralia Discuss Ms. Gralia's Retirement

Prior to 2018, Ms. Gralia and Mr. Rigdon had discussed her retirement plans in the context of general conversation. [Filing No. 37-3 at 46-47 ("Mike [Ms. Gralia's husband] had retired and, you know, he just would comment that when was I going to retire. . . . I told Jeff [Rigdon] at one point in time that Mike retiring didn't make much difference to me because he worked from home.").] In March 2018, Mr. Rigdon asked Ms. Gralia when she planned to retire. [Filing No. 37-3 at 45.] Ms. Gralia, then age 63-½, told him that she planned to work for at least one more year, until she turned 65, so that she was Medicare-eligible, but she "would like to try to work until age 66 when [she] could collect full Social Security." [Filing No. 37-3 at 46.] Mr. Rigdon simply nodded his head in response, but Ms. Gralia believed that Mr. Rigdon's "body language" indicated that he was disappointed. [Filing No. 37-3 at 46-47.]

About a month later, in April 2018, following a meeting at the Company's office about potential employee insurance options, Mr. Rigdon approached Ms. Gralia and her husband (who

was at the meeting), and the three engaged in general conversation. [Filing No. 37-3 at 48.] At some point, Mr. Rigdon asked Ms. Gralia when she planned to retire. [Filing No. 37-3 at 49.] Ms. Gralia again told him that she planned to work until 65 and possibly 66, and the three joked about retirement, with Ms. Gralia telling Mr. Rigdon that "I need to continue to work because Mike [Ms. Gralia's husband] has projects that I need to make money for." [Filing No. 37-3 at 49.] Mr. Rigdon and Ms. Gralia's husband laughed in response. [Filing No. 37-3 at 49.]

In June 2018, Mr. Rigdon again asked Ms. Gralia when she was going to retire during a meeting in his office with Ms. Pedigo present. [Filing No. 37-3 at 50.] Ms. Gralia gave the same response that she had previously: at least until age 65 for Medicare eligibility, and hopefully until age 66 when she could collect full Social Security benefits. [Filing No. 37-3 at 51.] This is the last time anyone at the Company asked Ms. Gralia about her retirement plans. [Filing No. 37-3 at 51.]

### 5.   *The Company Terminates Ms. Gralia And Combines the Positions of Office Manager and Bookkeeper*

The Company terminated Ms. Gralia on August 23, 2018—when Ms. Gralia was just a month shy of turning 64. [Filing No. 37-3 at 52.] Mr. Rigdon made the decision to terminate Ms. Gralia and told Ms. Gralia that the Company did not need two employees in the accounting department, and he chose to keep Ms. Pedigo. [Filing No. 37-3 at 52.] The office manager and bookkeeper positions were consolidated, and Ms. Pedigo assumed all the bookkeeping responsibilities. [Filing No. 35-6 at 3.] Mr. Rigdon cited a reduction in the Company's business as the reason for combining the positions. [Filing No. 37-1 at 31; Filing No. 37-3 at 52.] From 2017 to 2018, the Company's revenue decreased by $9 million. [Filing No. 37-1 at 33.] Ms. Gralia acknowledges that in 2018, the Company suffered a downturn in business. [Filing No. 37-3 at 53.] Mr. Rigdon testified that he chose Ms. Pedigo over Ms. Gralia because Ms. Pedigo was

"capable of doing more" and was "working five days a week, eight to five, when everyone else was there." [Filing No. 35-2 at 11.]  He also noted that Ms. Pedigo made fewer errors than Ms. Gralia, and he was more comfortable with Ms. Pedigo handling billing because she had formal training and was "capable of answering all of his questions without hesitation." [Filing No. 35-2 at 10-11.]

In October 2018—two months after Ms. Gralia's termination—Ms. Pedigo voluntarily resigned from her position with the Company to work for a company run by her family. [Filing No. 37-1 at 25.]  The Company hired Mr. Rigdon's daughter-in-law, Brittany Rigdon, to fill the office manager-bookkeeper position. [Filing No. 37-1 at 26.]  Mr. Rigdon did not contact Ms. Gralia to inquire about re-hiring her for the office manager-bookkeeper position. [Filing No. 37-1 at 26.]

### B.  Discussion

Ms. Gralia asserts a single claim against the Company—that she was unlawfully terminated because of her age in violation of the ADEA.

The Company argues that it is entitled to summary judgment on Ms. Gralia's ADEA claim because Ms. Gralia cannot establish a *prima facie* case of discrimination.  The company asserts that she cannot establish that she was performing according to the Company's legitimate expectations in her role of bookkeeper, nor can she establish that a similarly situated younger employee was treated more favorably. [Filing No. 36 at 10-13.]  The Company contends that Ms. Gralia's performance fell short because she was unable to effectively complete monthly, quarterly, and year-end reporting without extensive assistance from Ms. Boshears (as noted in her 2016 and 2017 annual performance reviews)—which caused the Company to incur additional consulting costs—and because she was not completing WIPs, "lack[ed] a fundamental understanding of

accounting," was averse to assuming new tasks, and did not work cooperatively with colleagues. [Filing No. 36 at 10.]  The Company further argues that Ms. Gralia has not established that a similarly situated employee was treated more favorably than her because Ms. Pedigo[3]—the individual who assumed Ms. Gralia's job responsibilities following her termination—is not "similar" because Ms. Pedigo's responsibilities as office manager "were broader than Ms. Gralia's responsibilities," Ms. Pedigo was Ms. Gralia's "direct supervisor[4]," and Ms. Pedigo had more experience and training in accounting practices and software.  [Filing No. 36 at 11-12.]  The Company also argues that Mr. Rigdon's conversations with Ms. Gralia about her retirement plans are insufficient evidence of discrimination under Seventh Circuit case law.  [Filing No. 36 at 13-14].  The Company contends it had a legitimate, nondiscriminatory reason for terminating Ms. Gralia—namely that it needed to cut expenses and consolidate the bookkeeping work into one position because of a downturn in business, and Ms. Pedigo was the better qualified candidate for the consolidated position [Filing No. 36 at 15].

In response, Ms. Gralia contends that she has established each element of her *prima facie* case and that the reasons proffered by the Company for her termination are mere pretext.  Ms. Gralia argues that she was performing up to expectations, citing her testimony that she believed that she was adequately performing her duties as bookkeeper, the lack of evidence of anyone

---

[3] The Company also argues that its receptionist—Katie Rigdon—is not a similarly situated employee appropriate for comparison.  [*See* Filing No. 36 at 12-13.]  However, Ms. Gralia does not contend that Ms. Katie Rigdon is similarly situated employee for purposes of the ADEA. [Filing No. 38 at 18 n.1.]

[4] The Court notes that whether Ms. Pedigo was Ms. Gralia's direct supervisor is disputed in the record before the Court.  In addition to Ms. Gralia's testimony that Jeff Rigdon was her supervisor after Monica Edwards retired, [Filing No. 37-3 at 17], Mr. Rigdon conducted Ms. Gralia's performance review in both 2016 and 2017 and signed each of the reviews as Ms. Gralia's "supervisor," [Filing No. 35-4 at 2-3; Filing No. 35-5 at 2-3].

complaining to her about her performance or indicating that her performance was not up to standards, and her performance bonuses in 2016 and 2017. [Filing No. 38 at 27-29.] She also contends that no one asked her to run WIPs, but that she would have run these reports if asked. [Filing No. 38 at 5.] Ms. Gralia further argues that she did not have any issues working with colleagues at the Company and was never informed of any such issues. [Filing No. 38 at 28-29.] On the similarly situated employee front, Ms. Gralia argues that because Ms. Pedigo absorbed Ms. Gralia's responsibilities as bookkeeper as part of the Company's mini reduction-in-force ("mini-RIF"), under Seventh Circuit precedent, she need only show that Ms. Pedigo was outside of Ms. Gralia's protected class of employees aged 40 or older. [Filing No. 38 at 20.] She further maintains that the Company's stated reasons for her termination are mere pretext and cites (1) Mr. Rigdon's inquiries about her retirement, (2) evidence that she maintains undercuts the Company's contention that her performance was lackluster, (3) perceived discrepancies in statements by the Company related to her termination, and (4) evidence related to the treatment of other candidates and employees age 40 or older. [Filing No. 38 at 22-33.]

The Company replies that Ms. Gralia's performance was not up to par, once again citing performance reviews and the opinions of Ms. Boshears and Mr. Rigdon. [Filing No. 39 at 8-9.] It also contends that the mini-RIF standard should not be applied to the fourth element because "Ms. Gralia was not the only individual who was terminated as a result of [the Company's] decreased workload" and cites the Company's 2018 termination of 24-year-old Alex VanHook because of alleged lack of work. [Filing No. 39 at 10.] The Company further argues that Ms. Gralia has not identified any evidence that its stated reasons for her termination are pretext and notes that Ms. Gralia does not dispute that the Company lost business in 2018, nor does she dispute Ms. Pedigo's qualifications. [Filing No. 39 at 12.] Instead, the Company argues, Ms. Gralia primarily "takes

16

issue with the characterization that her work performance," but that "even mischaracterized or foolish reasons are not pretext for discrimination." [Filing No. 39 at 13].  The Company contends that Ms. Gralia has not met her burden to show that the proffered reasons for her termination were not honest and genuine.  [Filing No. 39 at 14.]

The ADEA makes it unlawful for employers to discriminate against employees who are 40 years old or older because of their age.  *See* 29 U.S.C. § 623.  To prove her claim, Ms. Gralia must show that her age "was the 'but-for' cause of the challenged adverse employment action." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 177-78 (2009)).  "[U]nder the ADEA, it's not enough to show that age was *a* motivating factor" under the ADEA, rather a plaintiff "must prove that, *but for* his age, the adverse action would not have occurred." *Id.* (internal citations and quotation marks omitted) (second emphasis added).

Traditionally, an ADEA discrimination plaintiff could survive summary judgment by "presenting direct or circumstantial evidence that [the employer] took the challenged job action against h[er] because of his age"—referred to as the "direct method." *Id.*  Alternatively, a plaintiff could survive summary judgment by following the *McDonnell Douglas* burden-shifting approach—referred to as the "indirect method." *Id.*  However, in *Ortiz v. Werner Enterprises, Inc.*, the Seventh Circuit ordered district courts to "stop separating 'direct' from 'indirect' evidence and proceeding as if they [are] subject to different legal standards."  834 F.3d 760 (7th Cir. 2016). *Ortiz* reaffirmed that the *McDonnell Douglas* burden-shifting test provides an appropriate framework for analyzing a discrimination claim, but directed that going forward, "all evidence belongs in a single pile and must be evaluated as a whole." *Id.* at 766; *see also Johnson v. Advocate Health & Hosp. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018).  Thus, "the basic question at the

17

summary-judgment stage is whether the evidence as a whole would allow a reasonable jury to find that the plaintiff suffered an adverse job action because of his age." *Wrolstad*, 911 F.3d at 455.

### 1.  Burden-Shifting Approach

Ms. Gralia presents her case under the *McDonnell Douglas* framework.  [*See* Filing No. 38 at 22-33.]  This approach requires a plaintiff to provide evidence that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018) (quoting *Carson v. Lake Cnty.*, 865 F.3d 526, 533 (7th Cir. 2017)).  If a plaintiff provides evidence of each of these four elements for her *prima facie* case, the burden then shifts to the defendant employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.*  Once the employer does so, the burden shifts back to the plaintiff to "submit evidence that the employer's explanation is pretextual." *Id.* at 720 (quoting *Carson*, 865 F.3d at 533).

The Company stipulates that Ms. Gralia has satisfied the first and third elements of her *prima facie* case.  Namely, that as someone age 40 or older, she is a member of a protected class, and her termination from the Company constitutes an adverse employment action.  [Filing No. 36 at 10.]  The Company disputes that Ms. Gralia has provided any evidence to satisfy the second and fourth elements.  [Filing No. 36 at 10.]

As to the second element, "[a] determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case, may be based solely upon the employee's testimony concerning the quality of [her] work." *Williams v. Williams Elecs., Inc.*, 856 F.2d 920, 923 n.6 (7th Cir. 1988) (citing *Yarbrough v. Tower*

18

*Oldsmobile, Inc.*, 789 F.2d 508, 512 (7th Cir. 1986)).  Ms. Gralia testified that she believed that her work met the Company's expectations, that no one raised performance issues with her, and that she received performance bonuses as bookkeeper.  [Filing No. 35-4 at 2-3; Filing No. 35-5 at 2-3; Filing No. 37-1 at 12; Filing No. 37-6 at 2.]  Therefore, Ms. Gralia has met her burden of establishing the second element of a prima facie case.[5]  *See Weihaupt v. Am. Med. Ass'n*, 874 F.2d 419, 428 (7th Cir. 1989).

    With regard to the fourth element, the Seventh Circuit has modified the "similarly situated" requirement of a plaintiff's *prima facie* case "where the dismissed employee's duties are absorbed by another employee or employees rather than eliminated." *Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 725 (7th Cir. 2008).  The Seventh Circuit refers to such instances as a mini-RIF.  *Id.* In cases of a mini-RIF, a plaintiff need only show that her "duties were absorbed by employees not in the protected class." *Id.*  The Company argues that applying the mini-RIF standard is inappropriate because "Ms. Gralia was not the only individual who was terminated as a result of [the Company's] decreased workload" and cites the Company's 2018 termination of 24-year-old Alex VanHook because of alleged lack of work.  [Filing No. 39 at 10.]  But, the Seventh Circuit has made clear that "the determinative factor in deciding whether the mini-RIF variation applies is whether the discharged employee's duties were absorbed by an existing employee or eliminated, *not the number of employees let go*." *Petts*, 534 F.3d at 725 (emphasis added).  Here, Ms. Pedigo was 35 years old at the time of Ms. Gralia's termination in August 2018.  [Filing No. 35-17.]  The Company consolidated the positions of office manager and bookkeeper.  [Filing No. 35-6 at 3.] Ms. Pedigo, the existing office manager, assumed Ms. Gralia's bookkeeper job responsibilities

---

[5] The Court emphasizes that it does not find that Ms. Gralia was in fact meeting her employer's expectations, but simply that she has met her burden of establishing a fact issue under the second element of the burden shifting analysis.

upon Ms. Gralia's termination.  [Filing No. 35-6 at 3.]  Therefore, Ms. Gralia has established that her duties were absorbed by an employee not in her protected class.  *See Petts*, 534 F.3d at 725.

Having established her *prima facie* case, the burden shifts to the Company "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Skiba*, 884 F.3d at 720. The Company submits the following reason for Ms. Gralia's termination:  In an effort by the Company to reduce its workforce as a result of a decrease in work and revenue, it combined the office manager and bookkeeping positions, and as between Ms. Gralia and Ms. Pedigo, Ms. Pedigo was better qualified for the new combined position and was generally a better performer than Ms. Gralia.  [Filing No. 36 at 15.]  Having provided this explanation, the burden shifts back to Ms. Gralia to submit evidence that the Company's explanation is pretextual.  *Skiba*, 884 F.3d at 720; *see also Weide v. Swiss Re Life & Health Am., Inc.*, 2010 WL 3927591, at *7 (N.D. Ind. Oct. 1, 2010) ("The Seventh Circuit has . . . held that an employer's statement that it chose to terminate a plaintiff and retain another employee who possessed the company's desired skill set qualifies as an articulation of a legitimate non-discriminatory rationale.").

A pretext is a "deliberate falsehood." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006).  In the context of a RIF, "[p]retext may be shown by demonstrating that the reduction in force was an excuse to get rid of workers belonging to the protected group." *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000).  Furthermore, "[e]ven if the reduction was otherwise bona fide, a plaintiff may show pretext by demonstrating that the specific reasons given for including her in the reduction were pretextual." *Id.* at 1012-13.  That is, Ms. Gralia must show that the Company's proffered reason is not credible by pointing to evidence that the reason given is not the real reason the Company terminated her, has no grounding in fact, or is insufficient to warrant the decision made.  *See Weide*, 2010 WL 3927591, at *7.

20

As an initial matter, Ms. Gralia does not dispute that the Company lost business during 2018.  Mr. Rigdon testified that from 2017 to 2018, the Company's revenue decreased by $9 million.  [Filing No. 37-1 at 33.]   Ms. Gralia knew the Company was doing less business in 2018. [Filing No. 37-3 at 53 ("I could see the billings coming in and the contracts and, you know, just the paperwork, you could tell that it had slowed down some.").]  Ms. Gralia also does not dispute Ms. Pedigo's resume or qualifications.

To establish pretext, Ms. Gralia first argues that Mr. Rigdon's conversations with her are evidence of pretext; in other words, she contends that Mr. Rigdon's comments about retirement are evidence that the Company is lying about its stated reasons for her termination.  [Filing No. 38 at 25-26 ("Jeff Rigdon's repeated references to retirement were motivated by Gralia's age with the intention to rid the Defendant of older workers by subtly pressuring Gralia into retirement.").]  In support of her argument that Mr. Rigdon's inquiries are sufficient evidence of discrimination, Ms. Gralia cites *Feagans v. Carnahan*, 2016 WL 7210944 (S.D. Ind. Dec. 13, 2016).  In that case, plaintiff testified that her supervisor—the county prosecutor—told plaintiff to retire, and when she refused, he ordered her to clean out her desk and had her escorted from the building.  *Id.* at *5. The supervisor also offered differing accounts of plaintiff's employment status—telling the county council that plaintiff had retired and then stating that she had been terminated.  *Id.* The court determined this circumstantial evidence of discrimination was enough to survive summary judgment.  *Id.* at *8.

The Seventh Circuit has made clear that inquiries about an employee's retirement plans are insufficient evidence of discrimination.  "[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct."  *Colosi v. Electri-Flex*, 965 F.2d 500, 502 (7th Cir. 1992).

Furthermore, "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006).  While stray remarks can provide an inference of discrimination when the remark was (1) made by the decisionmaker, (2) around the time of the decision, and (3) in reference to the adverse employment action, Ms. Gralia has not provided sufficient evidence linking Mr. Rigdon's inquiries to her termination.  *See id.* Indeed, Mr. Rigdon testified that because of the downturn in business in 2018, he was interested in knowing individuals' retirement plans so that he could make necessary future staffing plans or adjustments.  [Filing No. 37-1 at 30-31 ("And towards the end I was – I was asking a lot of people about their future plans, other people when they planned to retire.  Because I did know that we were getting to a point where we needed fewer people. . . . Business was slowing down.  I knew we were going to be cutting back.  Just curious as to when people might be leaving voluntarily.").] Unlike the plaintiff in *Feagans*, Ms. Gralia cannot point to evidence of coercion and changing rationale.  There is no evidence that Mr. Rigdon either directly or indirectly gave Ms. Gralia a demand that she retire or be terminated or otherwise pushed her to leave.

Second, Ms. Gralia argues that the stated reasons are pretextual because the Company's "purported concerns" regarding Ms. Gralia's "fundamental understanding of accounting is contrary to the evidence of this case," [Filing No. 38 at 26], as are the concerns regarding "Ms. Gralia's performance as bookkeeper," [Filing No. 38 at 28].  She extensively cites and revisits her work history[6], the training she received by the former bookkeeper, Ms. Edwards, the performance

---

[6] Ms. Gralia's statement that she "had approximately twenty-six (26) years of accounting experience prior to beginning her employment with the Defendant," [Filing No. 38 at 27], is an embellishment not supported by any interpretation of the evidence and only serves to muddle the proceedings. Ms. Gralia testified that she worked in accounting for two different companies from 1974 until 1983 and again in 2004 when she spent nine months working in an accounting

bonuses of $500 and $750 that she received in 2016 and 2017 respectively, the absence of Mr. Rigdon informing her that he did not like her performance or behavior, and her general view of her job performance.  [Filing No. 38 at 27-29.]  She also notes that the Company had previously used an outside CPA to assist its former bookkeeper, Ms. Edwards, so the practice was not new to the Company.  [Filing No. 38 at 29.]

The Court's "only task" is to determine whether the Company "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." *Merillat*, 470 F.3d at 693 (internal quotation marks omitted).  Even if an employer is wrong in its assessment of plaintiff's performance, that alone is insufficient as evidence of pretext.  *See id.*; *see also Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) ("[A] court's role is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments.") (internal quotation marks and citation omitted).  And, in the context of a RIF, "it is not pretextual to terminate an individual perceived to be a weak performer in an organization even if that individual's performance could also be characterized as satisfactory or adequate." *Merillat*, 470 F.3d at 694.  Furthermore, a plaintiff's "own opinions about her own work performance or qualifications do not sufficient[ly] cast doubt on the legitimacy of her employer's proffered reasons for its employment actions." *Ost v. W. Suburban Travelers Limousine Inc.*, 88 F.3d 435, 441 (7th Cir. 1996).

Notably, in addition to not disputing that the Company faced decreased revenue in 2018, Ms. Gralia does not offer evidence that Mr. Rigdon and Ms. Boshears did not sincerely believe

---

department.  Beyond this experience, she testified that she had a few random short-term assignments through a temporary agency that may have involved accounting.  [Filing No. 35-1 at 4-6.]  While Ms. Gralia might be entitled to the benefit of reasonable inferences on summary judgment review, this characterization of her work experience is unreasonable.

that Ms. Pedigo was more capable than Ms. Gralia of handling accounting and bookkeeping tasks. It is undisputed that Ms. Pedigo had completed accounting coursework and had certifications in and experience with numerous accounting programs and software. Ms. Gralia also does not dispute that Ms. Pedigo ran WIP reports and was able to complete month- and year-end reporting more efficiently than Ms. Gralia. She merely disputes the Company's characterization of her own performance and abilities. This is insufficient evidence to cast doubt on the Company's proffered rationale.

Next, Ms. Gralia attempts to establish pretext by arguing that the Company has exhibited "inconsistent recollection of the events, suspicious statements, and preferential treatment of substantially younger individuals." [Filing No. 38 at 29.] Ms. Gralia cites the statements and actions below in support of this argument.

- The Company's stated rationale is that "it did not need two people in the bookkeeping department, but Gralia was informed by the Defendant that it did not need two people in the *accounting* department." [Filing No. 38 at 30 (emphasis original) (citing Filing No. 35-17 at 2; Filing No. 37-3 at 52).]

- The Company alleged in this dispute that Ms. Pedigo "was Gralia's supervisor, even though that was not what occurred in practice, that was never conveyed to Gralia, that was not indicated on the Defendant's organizational chart, nor was it indicated on Gralia's performance review." [Filing No. 38 at 30 (citing Filing No. 35-4 at 2-3; Filing No. 35-5 at 2-3; Filing No. 37-3 at 25-26; Filing No. 37-8 at 2).]

- Jeff Rigdon testified that Ms. Pedigo "was working five days a week, eight to five, when everyone was there," but Ms. Gralia testified that Ms. Pedigo "only worked Monday through Thursday from 8:00 a.m. to 5:00 p.m." because "[o]n Friday's (sic), Jessica Pedigo worked from 8:00 a.m. to 12:00 p.m." [Filing No. 38 at 30 (citing Filing No. 37-1 at 31; Filing No. 37-6 at 4).]

- Ms. Pedigo, then age 35, "was given the opportunity to compete for the consolidated bookkeeper and office manager position, while Gralia was not given that opportunity." [Filing No. 38 at 30 (citing Filing No. 35-6 at 3; Filing No. 37-6 at 3).]

- Ms. Gralia "was never given the opportunity to take on more work, as Jeff Rigdon only discussed the opportunities with Jessica Pedigo." [Filing No. 38 at 30 (citing Filing No. 35-6 at 3; Filing No. 37-6 at 3).]

- "When Jessica Pedigo resigned on October 31, 2018, to run her family member's business, rather than reach out to Gralia to see if she wanted the position, Defendant chose to hire Brittany Rigdon, age twenty-five (25)." [Filing No. 38 at 30-31.]

"Shifting explanations for an employee's termination are suggestive of pretext, but 'the explanations must actually be shifting and inconsistent to permit an inference of mendacity.'" *Davenport v. Northrop Grumman Sys. Corp.*, 281 F. App'x 585, 588 (7th Cir. 2008) (quoting *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577-78 (7th Cir. 2003)) (internal citation omitted). Here, Ms. Gralia cites alleged discrepancies between the use of the term "bookkeeping" versus "accounting" to describe her tasks. The interchangeability of the two words is a distinction without a difference and does not create an actual shifting and inconsistent explanation for her termination. *See id.* at 589 ("The inconsistencies Davenport points to—such as the exact characterization of her experience in the main storeroom and whether her job responsibilities were spread among three junior employees or predominately absorbed by one—do not suggest that Cala's reasons for terminating her were dishonest."); *see also Quevedo v. Top-Line Furniture Warehouse Corp.*, 2018 WL 1508530, at *13 (N.D. Ill. Mar. 27, 2018) ("Minor inconsistencies in the *characterization* of Plaintiff's termination do not show that the *reasons* were pretextual.") (emphases in original). The same is true regarding the purported inconsistencies about whether Ms. Pedigo was Ms. Gralia's supervisor and whether Ms. Pedigo worked a full day or a half day on Fridays; the purported inconsistencies are immaterial to whether the *reasons* for Ms. Gralia's termination are sincerely held.

Ms. Gralia's contention that the Company's failure to interview her for the combined office manager-bookkeeper position created as part of the mini-RIF, or otherwise discuss the opportunity

with her, is evidence of pretext is also not supported.  Ms. Gralia cites no case law supporting the contention that the Company was required to conduct interviews of its existing employees before determining who to let go as part of the mini-RIF, nor does she explain how the failure to interview her is evidence of pretext.  Ms. Gralia's argument that the Company's failure to contact her after Ms. Pedigo resigned to inquire if she wanted to apply for the combined office manager-bookkeeping position is evidence of pretext likewise fails; she does not explain how this is evidence that the Company's was lying about the reason for her termination when it conducted the mini-RIF.

Finally, Ms. Gralia directs the Court to the Company's treatment of other employees and candidates as evidence of pretext.  [Filing No. 38 at 32.]  Ms. Gralia testified that when Mr. Rigdon was seeking to hire a bookkeeper in anticipation of Ms. Edwards' retirement, he interviewed a candidate that Ms. Gralia described as "older." [Filing No. 37-3 at 41.]  Following the interview, Ms. Gralia asked how it went and Mr. Rigdon said that "he probably should not say this, but he wanted somebody younger."  [Filing No. 37-3 at 41.]  Mr. Rigdon subsequently hired Ms. Gralia as bookkeeper.  [Filing No. 37-3 at 42.]   She was 60 at the time.  [Filing No. 37-3 at 50.]  Ms. Gralia also notes that Mr. Rigdon testified at his deposition that former employee Jeannette Ramsey was terminated at age 44 for attendance issues, but responses to an earlier interrogatory indicated that she had voluntarily resigned.  [Filing No. 38 (citing Filing No. 35-7 at 16; Filing No. 35-17 at 2; Filing No. 37-1 at 25-26).]  Setting aside that Ms. Gralia herself was hired at age 60 for the bookkeeper position, suggesting age was not a factor, Ms. Gralia does not explain how the alleged statement about the candidate's age and purported discrepancy regarding Ms. Ramsey bear on whether the explanation for *her termination* was untrue.  This evidence cited by Ms. Gralia is

insufficient to permit a reasonable factfinder to conclude that the Company's stated rationale is false and that Ms. Gralia's age was the "but for" cause for her termination during the mini-RIF.

Ms. Gralia also contends that "between October 2016 to October 2018, out of the fourteen (14) employees who had their employment terminated with Defendant, twelve (12) were either at the age of forty (40) or older." [Filing No. 38 at 32 (citing Filing No. 35-17 at 2).] However, Ms. Gralia misrepresents the record evidence. The employee roster cited by Ms. Gralia shows that of those 14 employees, seven left the company voluntarily, five were terminated for performance issues, and one (Ms. Gralia) was terminated in connection with a RIF. [Filing No. 35-17 at 2.] Of the five terminated for performance issues, two were under the age of 40. [Filing No. 35-17 at 2.] As noted, while Ms. Gralia is entitled to reasonable inferences based on the evidence, she is not entitled to distort the record evidence. And, this evidence does not show that the Company's proffered reason for Ms. Gralia's termination was pretextual or that Ms. Gralia's age was the reason for her termination.

In sum, Ms. Gralia has not presented evidence establishing that the Company's proffered reasons for her termination in August 2018 were not honestly held.

### 2. *Holistic Approach*

Although not squarely addressed by Ms. Gralia in her brief, in the interest of completeness, the Court will consider the evidence under the holistic approach established in *Ortiz*. Under this all-inclusive approach, Ms. Gralia has not presented evidence that would enable a reasonable jury to conclude that but for her age, she would not have been terminated in the mini-RIF. That is, she has not cited evidence that would enable a reasonable factfinder to find that Ms. Gralia would have been chosen over Ms. Pedigo for the combined office manager-bookkeeper position if she were younger "and everything else had remained the same." *See Ortiz*, 834 F.3d at 764.

As discussed above, Mr. Rigdon's inquiries about Ms. Gralia's retirement plans are insufficient to permit a reasonable factfinder to conclude that Ms. Gralia's age caused her termination. *See Colosi*, 965 F.2d at 502. These inquiries—which Mr. Rigdon testified were made for planning purposes—do not support a reasonable inference that Ms. Gralia was selected over Ms. Pedigo for termination in the mini-RIF because of her age. Indeed, the evidence runs contrary to an inference of discrimination because the Company hired Ms. Gralia for the bookkeeping position when she was 60 years old. Instead of age, as discussed above, the evidence indicates that Ms. Gralia was terminated because business had slowed, and Ms. Pedigo was more qualified and had exhibited more competence than Ms. Gralia to perform the combined office manager-bookkeeper job.

In conclusion, Ms. Gralia's ADEA claim fails both under the *McDonnell Douglas* burden-shifting framework and the *Ortiz* holistic framework. Therefore, the Court **GRANTS** the Company's Motion for Summary Judgment.

## IV.
### CONCLUSION

For the reasons explained above, the Company's Motion to Strike Paragraphs 10 and 12 of the Affidavit of Brenda Gralia, [40], is **GRANTED**, and the Company's Motion for Summary Judgment, [35], is **GRANTED**. Final judgment shall issue accordingly.


Date: 10/6/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**